UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE M. POLHEMUS,

                Plaintiff,               Civil Action No.: 14-14442
                                           Honorable Arthur J. Tarnow
                v.                   Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commisioner of
Social Security,

                Defendant.

_____/


## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 17, 19]

      Plaintiff Michelle Polhemus appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying her

applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under the Social Security Act (the "Act"). Both

parties have filed summary judgment motions, referred to this Court for a

Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The

Court finds that the Administrative Law Judge ("ALJ") did not impermissibly

play doctor, did not err in finding Polhemus's claims regarding the severity

of her impairments not credible, and issued a residual functional capacity

assessment ("RFC") that is supported by substantial evidence of record.

For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 19]** be **GRANTED**;

- Polhemus's motion **[R. 17]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Claimant's Background and Claimed Disabilities

At the time of the administrative hearing, Polhemus was a 47-year-old high school graduate, who had previously worked full-time as a hospital cleaner and had continued to perform that work on a part-time basis. [R. 13-2, Tr. 40-42]. She claimed disability due to diabetes, hypoglycemia, thyroid, memory and vision problems, acid reflux, chronic cough, breathing problems, heart palpitations and anxiety. [R. 13-6, Tr. 220].

### B.   Procedural History

Polhemus filed applications for DIB and SSI, alleging disability as of April 23, 2009. [R. 13-5, Tr. 163-77]. The claims were denied initially and Polhemus filed a timely request for an administrative hearing, held on December 17, 2013, at which both she and a vocational expert ("VE") testified. [R. 13-2, Tr. 28-57; R. 13-4, Tr. 84-104]. In a December 24, 2013 written decision, the ALJ found Polhemus not disabled. [R. 13-2, Tr. 10-

27].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [*Id.*, Tr. 3-7].  Polhemus timely filed for judicial review.  [R. 1].

### C.    The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Polhemus was not disabled.  At step one, the ALJ determined that Polhemus had not engaged in substantial gainful activity since her alleged onset date, despite the fact that she was continuing to work part time.  [R. 13-2, Tr. 15].  At step two, he identified severe impairments of gastroesophageal reflux disease/gastritis with chronic cough, inflammatory arthropathy/arthritis and lumbar degenerative disc disease.  [*Id.*].  At step three, the ALJ concluded that none of Polhemus's severe impairments, either alone or in combination, met or medically equaled a listed impairment.  [*Id.*, Tr. 16-17].

Next, the ALJ assessed Polhemus's RFC, finding her capable of light

work involving no climbing of ropes, ladders or scaffolds.  [*Id.*, Tr. 17].  She

was also to avoid concentrated exposure to odors, dusts, fumes, gasses or

other irritants, and must be afforded a "'sit/stand option' defined as the

ability to occasionally alternate between sitting and standing positions while

remaining on-task at least 90 percent of an ordinary workday, with usual

and customary breaks."  [*Id.*].

At step four, the ALJ determined that Polhemus's RFC deemed her

incapable of returning to her past relevant work.  [*Id.*, Tr. 21].  However,

with the assistance of VE testimony, the ALJ concluded at step five that a

hypothetical claimant matching Polhemus's profile could still perform a

substantial number of jobs in the national economy, such that she was not

disabled, including assembler (10,000 jobs statewide), inspector (3,000

jobs) and packager (4,000) jobs.  [*Id.*, Tr. 22].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining

whether the Commissioner's decision is supported by substantial evidence

and was made in conformity with proper legal standards.  *Gentry v. Comm'r

of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless.  *Id.* at 655-56.

With these standards in mind, this Court finds that the ALJ's determination that Polhemus is not disabled is supported by substantial evidence.

6

## III.   ANALYSIS

Polhemus argues that the ALJ: (1) impermissibly "played doctor" when assigning little weight to the opinions of psychological consultants; (2) issued an RFC that did not account for all of her medically supportable limitations; and (3) made an unsupportable credibility determination.  None of Polhemus's arguments has merit.

### A.   Alleged Mental Impairment

Polhemus argues that the ALJ "played doctor" by assigning little weight to the opinion the April 2012 findings of consultant examiner Elizabeth Bishop, Ph.D., that Polhemus suffered from a panic disorder and agoraphobia which, in combination with her medical issues, would make it difficult for her to maintain consistent employment.  [R. 13-2, Tr. 16; R. 13-7, Tr. 279].  The ALJ also gave little weight to reviewing consultant Ruqiya Tareen, M.D.'s July 2012 opinion that Polhemus's anxiety resulted in moderate social functioning and concentration, persistence and pace limitations for the same reasons.  [R. 13-2, Tr. 16; R. 13-3, Tr. 62].  The Court finds that the ALJ did not impermissibly play doctor when assigning little weight to these opinions.

An ALJ impermissibly plays doctor by substituting his or her own judgment for that of medical experts whose opinions are supported by

7

medical evidence.  *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009).  On the other hand, an ALJ is not bound to accept an opinion of a medical expert that is not supported by reliable reasoning or objectively determinable symptoms.  *Id.*; 20 C.F.R. § 404.1527(c)(3).  An ALJ must also consider whether a medical opinion is consistent with the record as a whole.  § 404.1527(c)(4); *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 501 (6th Cir. 2014).  Furthermore, because they do not provide the detailed longitudinal picture provided by treating sources, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing § 404.1527(c)).

   In the guise of an argument that the ALJ was playing doctor, Polhemus appears actually to be asserting that the ALJ was required to give controlling weight to nontreating and nonexamining sources – an assertion that is plainly without merit given the authority cited above. Additionally, contrary to Polhemus's argument otherwise, the ALJ provided good reasons for assigning Dr. Bishop's and Dr. Tareen's opinions little weight.  He reasoned that the opinions lacked medical support, that Polhemus had been prescribed psychotropic medication just prior to the hearing, that she had not received inpatient or outpatient psychological

8

care, and that there were no longitudinal symptoms of mental impairment in the record.  [R. 13-2, Tr. 16].  These assessments of the opinions and the record are accurate.

Dr. Tareen's opinion relied largely on Dr. Bishop's, and Dr. Bishop's opinion was not supported by medical evidence.  [R. 13-3, Tr. 61-67; R. 13-7, Tr. 277-79].  Further, Polhemus had just been prescribed psychotropic medication for anxiety in October 2013, a couple of months prior to the hearing.  [R. 13-7, Tr. 406].  That anxiety medication was not prescribed by a psychologist or psychiatrist; as Polhemus acknowledged to Dr. Bishop, she had not had any mental health treatment since 1999.  [*Id.*, Tr. 277].  Polhemus points out that she was also prescribed an antidepressant after her husband left her in March 2011.  [*Id.,* Tr. 356-57].  Nonetheless, the ALJ's observation that there is no longitudinal record of symptoms of mental impairment holds true.

Finally, the Court concurs with the Commissioner that Polhemus has failed to set forth any evidence that her lack of mental health treatment was a symptom of mental illness.  *Bryce v. Comm'r of Soc. Sec.*, No. CIV.A. 12-14618, 2014 WL 1328275, at *10 (E.D. Mich. Feb. 10, 2014), *adopted by* No. 12-CV-14618, 2014 WL 1328277 (E.D. Mich. Mar. 28, 2014) (rejecting argument that lack of mental health treatment was due to mental disorder

where there was no evidence that claimant was unaware of need for treatment).  The record shows that she reported anxiety and depression to medical providers, but that she only conveyed such symptoms occasionally.  [R. 13-7, Tr. 263-64, 356-57, 406].  The infrequency of Polhemus's complaints of anxiety or depression lends supports to the ALJ's determination that Polhemus suffers no more than minimal limitations with respect to her mental capabilities.

For these reasons, the Court finds that the ALJ did not impermissibly play doctor, and that he provided good reasons for assigning little weight to the opinions of Dr. Bishop and Dr. Tareen.

### B.    Credibility Determination

Polhemus argues that the ALJ's credibility analysis is flawed in that he failed to consider all of the required regulatory factors and misconstrued the evidence of record.  Credibility determinations of witnesses are within the province of the ALJ, and will not be overturned "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).  At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.  The Court finds no compelling reason to overturn the ALJ's credibility determination, which is supported by substantial evidence.

First, although the ALJ is required to consider all of the relevant

10

regulatory factors when assessing a claimant's credibility, there is no requirement that the ALJ "explicitly discuss every factor" so long as his decision "contain[s] specific reasons for the finding," is "supported by the evidence" of record and is "sufficiently specific" to make the weight given to the claimant's statements clear to both the claimant and subsequent reviewers. *Wandrie v. Comm'r of Soc. Sec.*, 2013 WL 5770379 at *7 (E.D. Mich. Oct. 24, 2013) (quoting S.S.R. 96–7p, 1996 WL 374186 at *2).

Here, there is support in the records for the ALJ's assessment of Polhemus's credibility.  The ALJ noted that, although she claims to have stopped working in 2009 due to hand pain and unstable sugar levels, she had contradictorily told a consulting examiner that she stopped working when she got married and moved.  [R. 13-2, Tr. 18; R. 13-7, Tr. 277].  The ALJ further pointed out that Polhemus's treatment records showed no complaints of hand pain other than general wear and tear until 2013, and no significant sugar level problems since the early 2000s.  [R. 13-2, Tr. 18; R. 13-7, Tr. 265, 271, 398].  In fact, as the ALJ noted, Polhemus's treatment records showed no significant treatment for any of her conditions prior to 2011, despite her claim of disability since 2009.  [R. 13-7, Tr. 317-19, 323-24, 353-55, 359-59, 386-87].

The ALJ also considered Polhemus's daily activities, noting that while

11

she testified that she did not drive due to anxiety, she had told providers

that she had never driven, and neither had her mother or grandmother.  [R.

13-2, Tr. 18; R. 13-7, Tr. 278].  In addition, while Polhemus testified that her

mother did most of her laundry and cooked for her, she had previously

reported to providers that she did her own housework and laundry, and was

even cleaning out her house to move at one point after living there for

thirteen years.  [R. 13-2, Tr. 18; R. 13-7, Tr. 278].

Turning to the medical evidence of record, the ALJ discussed the lack

of objective support for Polhemus's subjective complaints, including a

notation that anxiety for which she had been treated in 1999 and 2011 had

stemmed from situational stressors at work and at home; that a

consultative examination in 2012 showed no difficulty in grip or dexterity

and found Polhemus's "most significant ailment" to be her reflux disease

with chronic cough; and that her own long-time treating physician opined in

September 2012 that Polhemus had no particular limitations preventing her

from working full-time.  [R. 13-2, Tr. 19-21; R. 13-7, Tr. 264, 269-75, 331,

356-57].

Although Polhemus argues otherwise, none of the ALJ's reasons for

finding her less than fully credible misstates the evidence of record.  At

most, the ALJ may have drawn inferences from this evidence contrary to

how Polhemus wishes, such as the basis for her lack of significant
treatment prior to 2011 or the reasons behind her refusal to drive.
However, the inferences that the ALJ drew from the record were
reasonable, and there is no compelling reason to disturb his credibility
finding.  *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th
Cir. 2010) (court "must affirm the ALJ's decision if his findings and
inferences are reasonably drawn from the record or supported by
substantial evidence even if that evidence could support a contrary
decision").

## C.   RFC Assessment

The regulations define the RFC as "the most you can still do despite
your limitations."  20 C.F.R. § 416.945(a)(1).  When crafting an RFC, an
ALJ is only required to include those limitations he finds credible.  *See Irvin
v. Soc. Sec. Admin.*, 573 Fed. Appx. 498, 502 (6th Cir. 2014) (citing *Casey
v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).
Polhemus argues that the ALJ erred in crafting an RFC that did not include
all of her credible limitations, including limitations related to her ankle pain,
cervical spinal pain and anxiety.  To the extent this argument rests on
Polhemus's subjective allegations of pain and mental limitations, the Court
has already concluded that the ALJ properly evaluated her credibility.

13

Furthermore, other than noting a limitation of needing to be off task more than ten percent of the workday, Polhemus identifies no specific limitation she believes her impairments warrant that was not included in the RFC.  Instead, she broadly argues that the ALJ's RFC did not properly account for her impairments, and makes general reference to mostly unspecified "medical evidence" and "subjective complaints."  [R. 17, PgID 522-25].

Of the few medical records she does cite, none of those records demands the imposition of additional limitations beyond those cited by the ALJ.  For instance, Polhemus points to her initial ankle x-rays noting "[e]vidence of marked degenerative disease or erosive changes."  [R. 13-7, Tr. 421].  However, the diagnosis of a condition alone says nothing about its severity. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988).  Indeed, subsequent treatment records noted improvement in Polhemus's ankle swelling and pain with oral steroid treatment.  [R. 13-7, Tr. 405-406, 408, 427].

Similarly, although cervical x-rays showed moderate to severe left neural foraminal narrowing at C2-3 and mild narrowing at C3-4, treatment notes revealed no loss of range of motion and did not mention any specific treatment for cervical spine pain other than a course of oral steroids

14

prescribed for inflammatory arthritis generally, which produced notable improvement in overall joint pain and swelling. [*Id.*, Tr. 388-89, 405-406, 408, 420, 427].

With regard to her anxiety, Polhemus argues that the ALJ should have imposed a limitation to being off-task more than ten percent of the work day, which would have resulted in a disabled finding based on the VE's testimony. However, this limitation is solely based on Polhemus's own subjective allegations that pain and anxiety made it difficult for her to concentrate, which the ALJ properly found less than fully credible. Since the ALJ's credibility determination was not rendered in error, Polhemus's argument fails.

## V. CONCLUSION

Because the ALJ's step two finding consists of, at worst, harmless error, and because the remainder of the ALJ's decision is procedurally sound and supported by substantial evidence, the Court **RECOMMENDS** that Polhemus's Motion for Summary Judgment **[R. 17]** be **DENIED**, the Commissioner's Motion **[R. 19]** be **GRANTED** and this case be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: December 21, 2015          United States Magistrate Judge

15

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P.

72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
