UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE M. POLHEMUS,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

Case No. 14-14442

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17]; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]; AND REMANDING CASE**

Plaintiff seeks review of an Administrative Law Judge (ALJ) decision denying her application for disability benefits. Plaintiff filed a Motion for Summary Judgment [17] on April 15, 2015. Defendant filed a Motion for Summary Judgment [19] on May 20, 2015. Plaintiff filed a Response to Defendant's Motion for Summary Judgment [21] on July 13, 2015. On December 12, 2015, the Magistrate Judge issued a Report and Recommendation [22] recommending that the Court grant Defendant's motion and deny Plaintiff's. Plaintiff filed Objections to the Report and Recommendation [23] on January 4,

1

2016.  Defendant filed a Response to Plaintiff's Objections [24] on January 14, 2016.

For the reasons stated below, the Court declines to adopt the R&R. Defendant's Motion for Summary Judgment [21] is **DENIED**.  Plaintiff's Motion for Summary Judgment [17] is **GRANTED IN PART**.

## FACTUAL BACKGROUND

Plaintiff applied for Disability Insurance Benefits ("DIB") and Social Security Benefits ("SSI") on June 21, 2012, alleging an onset date of April 23, 2009. The state disability determination service denied her application on July 24, 2012, and she requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Thomas C. Ciccolini held a hearing in Akron, Ohio on December 17, 2013. Plaintiff appeared by video. A vocational expert ("VE") testified as well. ALJ Ciccolini issued a decision on December 24, 2013, finding Plaintiff not disabled. This decision became final on September 19, 2014, when the Appeals Council denied Plaintiff's request for review. Plaintiff timely filed for judicial review.

At the time of the administrative hearing, Plaintiff was a 47-year-old high school graduate, who had worked full-time as a medium unskilled commercial cleaner until April 2009, and part-time, intermittently, from that point on. At the time of the hearing, she was working every other weekend as a cleaner in a nursing

home.  For DIB purposes, her date of last issued is June 30, 2015. She has claimed disability due to diabetes, hypoglycaemia, thyroid, memory and vision problems, acid reflux, chronic cough, breathing problems, heart palpitations and anxiety.

### STANDARD OF REVIEW

The Court reviews objections to a Magistrate Judge's Report and Recommendation (R&R) on a dispositive motion *de novo*.  *See* 28 U.S.C. §636(b)(1)(c). Defendant has argued that Plaintiff's Objections do not specifically address errors in the R&R, and therefore this Court should reject Plaintiff's Objections and affirm the Magistrates decision. [24]. While this would mean that the Court is not obligated to address Plaintiff's Objections, the Court must nonetheless exercises *de novo* review over a Magistrate's findings and recommendations on dispositive matters. *See Massey v. City of Ferndale*, 7 F.3d 506, 510-511 (6th Cir.1993); *Flournoy v. Marshall*, 842 F.2d 875, 878-79 (6th Cir. 1988).

Judicial review of a decision by an ALJ is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The ALJ's factual findings "are conclusive if supported by substantial evidence."  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th

Cir. 1987).  "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  The substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).  However, so long as the ALJ's conclusion is supported by substantial evidence, a court must "defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

## ANALYSIS

The Plaintiff raises three objections to the Report and Recommendation. First, Plaintiff objects to the Magistrate's finding that the ALJ did not "play doctor." Second, Plaintiff objects to the Magistrate's holding that substantial evidence supported the ALJ's credibility determination. Third, Plaintiff argues that

the ALJ's RFC determination is improper, because the underlying credibility determinations regarding Plaintiff's limitations were unsupported.

### a. Plaintiff's First Objection

Plaintiff first objects to the Magistrate's finding that the ALJ did not "play doctor" when he assigned little weight to the opinions of Drs. Bishop and Tareen. [23 at 582]. The Magistrate held that the ALJ's reasons for discounting the doctors' opinions were supported by substantial evidence. [22 at 572]. Plaintiff argues that the ALJ's reasons were factually inaccurate, and that he improperly drew negative inferences from Plaintiff's scarce mental health treatment. [23 at 583].

An ALJ impermissibly plays doctor by substituting his or her own judgment for that of medical experts whose opinions are supported by medical evidence. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009). On the other hand, an ALJ is not bound to accept an opinion of a medical expert that is not supported by reliable reasoning or objectively determinable symptoms. *Id*.; 20 C.F.R. § 404.1527(c)(3). An ALJ must also consider whether a medical opinion is consistent with the record as a whole. § 404.1527(c)(4); *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 501 (6th Cir. 2014). Furthermore, because they do not provide the detailed longitudinal picture provided by treating sources, "opinions from

nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing § 404.1527(c)). However, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2 (1996).

The ALJ ultimately determines whether an impairment is severe. *Id.* An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) and 416.921(a). Step two "has been described as 'a de minimis hurdle'; that is, 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. The goal of the test is to 'screen out totally groundless claims.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (internal citations omitted). Findings of fact are not supported by substantial evidence when the ALJ does not accurately state the evidence used to support his finding. *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009) ("Because the ALJ does not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence."); *see also Simpson,* 344 F. App'x at 192.

6

The medical opinions at issue are those of State psychological consultants Dr. Ruqiya Tareen and Dr. Betty Bishop. Dr. Bishop performed a psychological consultative examination on April 19, 2012. [17 at 513-14]. Dr. Bishop opined that, "[g]iven [Plaintiff's] panic attacks, agoraphobia, and multiple medical issues, she is likely to have difficulty maintaining consistent employment." *Id*.

Dr. Ruqiya Tareen examined Dr. Bishop's report, and issued a Disability Determination Explanation, dated July 24, 2012. [13-3 at 105-130]. Dr. Tareen assessed the Plaintiff's anxiety-related disorder according to the Paragraph 'B' Criteria as follows:

> Restriction of Activities of Daily Living: Mild
> Difficulties in Maintaining Social Functioning: Moderate
> Difficulties in Maintaining Concentration, Persistence or Pace: Moderate
> Repeated Episodes of Decompensation, Each of Extended Duration: None.

[13-3 at 109]. In support of these findings, Dr. Tareen explained that Plaintiff could carry out simple tasks, but struggled with "detailed, complex and sequential tasks." [13-3 at 113-14]. Her social functioning was "moderately limited" by her anxiety and by her tendency to isolate herself. *Id*. Therefore, her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was "moderately limited." *Id*.

The ALJ gave little weight to the opinions of the Drs. Tareen and Bishop for three reasons:

> [T]he claimant was only just prior to her hearing prescribed psychotropic medication, has not required or received inpatient or outpatient psychological care, and no longitudinal signs or symptoms of mental distress or dysfunction are documented in the record.

[13-2 at 62]. The ALJ then reassessed Plaintiff's mental impairments according to the 'B' Criteria and found, respectively, as follows: none, mild, mild, and none. *Id.* The ALJ offers some additional explanation for why he discounted Dr. Bishop's opinion:

> As noted, however, the claimant remained independent in her daily activities, and able to shop; her treatment records disclose no significant psychological complaints or observed clinical signs or findings, and I have accorded this opinion little weight herein.

[13-2 at 66].

When weighting medical opinions, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, whether the opinions are supported by and consistent with the record as a whole, the specialization of the source, and "other factors" in the record. 20 C.F.R. § 404.1527(c). The ALJ appears to have found these opinions unsupported by or inconsistent with the medical evidence in the record. He also appears to have

considered "other factors," such as Plaintiff's scarce history of treatment for mental impairments.

In response her lack of treatment, Plaintiff points out that she had, in fact, been prescribed medication to treat her anxiety once before, in March 2011, contradicting the ALJ's claim that "she was only just prior to her hearing prescribed psychotropic medication." [13-2 at 62]. Defendant argues that the ALJ was still correct to draw a negative inference from this, because there was no evidence in the medical records that Plaintiff ever filled the prior medication.

[19 at 548-49]. Social Security Ruling 96-7p states that a claimant's testimony "may be less credible . . . if the medical reports or records show that the individual is not following [her] treatment as prescribed and there are no good reasons for this failure." *Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996). The logic behind the ruling is that claimants with severe symptoms are more likely to comply with treatment, since the severity of their symptoms may increase their motivation to seek the relief promised by their treatment plan. *See id.* ("Persistent attempts by the individual to obtain relief of pain or other symptoms ... may be a strong indication that the symptoms are a source of distress to the individual and

generally lend support to an individual's allegations of intense and persistent symptoms.").

However, Social Security Ruling 96-7p also provides that an ALJ "*must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.*" *Id.* (emphasis added). The ruling lists examples of sound explanations for noncompliance, recognizing, for instance, that, "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services;" and, "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms." *Id*. at *8.

Though Ruling 96-7p itself is silent on the effect of mental illness on compliance, the Sixth Circuit has joined other federal courts in recognizing that for a claimant suffering from mental illness, noncompliance with treatment may be a symptom of her condition, rather than evidence that her condition is not disabling. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). *See also Blankenship v.*

*Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Defendant argues that it was proper for the ALJ to draw a negative inference from Plaintiff's lack of treatment, because Plaintiff "has failed to set forth any evidence that her lack of mental health treatment was a symptom of mental illness." Defendant cites *Bryce v. Comm'r of Soc. Sec.* No. CIV.A. 12-14618, 2014 WL 1328275, at *10, *adopted by* No. CIV.A. 12-14618, 2014 WL 1328277 (E.D. Mich. Mar. 28, 2014) The Magistrate accepts this argument. [22 at 573-74]. However, SSR 96-7p states that the ALJ must consider not only "explanations that the individual may provide," but also "other information in the case record." 1996 WL 374186, at *7 (1996).  The onus is on the ALJ to develop the case record in this regard:

> The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

*Id.* at *8.

The record should have put the ALJ on notice that Plaintiff's lack of treatment was due at least in part to financial hardship. As the ALJ did note, when she was first prescribed medication in March 2011, she was unemployed and "her husband left her with no money or prospects." [13-2 at 65]. That year, she fell behind on house payments, and her house was eventually foreclosed on in 2012. [13-7 at 297-98] Defendant even recognizes that Plaintiff had to forgo treatment in 2012-13, because her insurance lapsed. [19 at 538 & 548]. It seems probable, then, that Plaintiff did not fill her prescription, because she could not afford to. The only insight the hearing transcript provides on this matter is Plaintiff's testimony that she was getting treatment at the University of Michigan at the time of the hearing. That Michigan was "helping [her] out" because she did not have insurance. [13-2 at 94-95]. This may explain why Plaintiff began taking medication for her anxiety in 2013 but had not taken similar prescriptions in 2011. Although, as Defendant notes, Plaintiff did seek some medical treatment during the period in question, it is not clear whether she had affordable coverage for mental health services, or access to "free or low-cost medical services." The ALJ had the opportunity to question Plaintiff on this matter, and he failed to do so.

The record also should have put the ALJ on notice that Plaintiff's lack of treatment was a result of her condition. As Plaintiff argues, she was self-

medicating with alcohol, a choice that perhaps explains her "exercise of poor judgment in seeking rehabilitation." *Accord Regennitter v. Commissioner*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); *see Blackenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989); *see also Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("mental illness in general…may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.") [23 at 583]. At the hearing, Plaintiff testified that she was wary of taking new medications, because the side effects were "disorienting." [13-2 at 97].  Several treatment notes state that Plaintiff had been self-medicating for her anxiety, and suggest that this was due, in part, to her fear of starting new medications:

- On October 9, 2013, Dr. Francis noted: "She notes increase in overall baseline anxiety with pressured speech with steroid use. She admits to increased daily alcohol use as part of self medicating for anxiety and pain."

- Dr. Coffey noted on October 25, 2013: "She is wary of starting medicines. She has a history of alcohol intake and was recommended to cut down on and quit alcohol prior to starting any methotrexate therapy. She a history of anxiety, which is longstanding. … I encouraged her to discuss with Dr. Francis the possibl[e] institution of methotrexate for her inflammatory arthropathy. It appears that she may find it difficult to quit alcohol since she appears to be using it to control anxiety."

[13-7 at 454 & 458] Plaintiff may have been self-medicating with alcohol because it was cheaper than prescribed medication. She may have preferred to use something she was familiar with, because new medications made her anxious. Her

medical records also show a history of frequent drinking, suggesting that she may have been doing this for many years.

The record suggests other ways in which the Plaintiff's anxiety could have interfered with her treatment. Plaintiff testified that she does not drive because of her anxiety:

> I suffer from anxiety, and I just don't think I'd be a safe driver on the roads for me or anyone else. Because I – like I said, I have a sugar problem. I get confused a lot, and I shake a lot, and I just don't think I'd be a very good person to be on the road.

[13-2 at 98]. The ALJ does not find this claim credible, which is discussed below. Assuming, *arguendo*, that Plaintiff really is too anxious to drive, this may have made it too difficult to get to a counselor, therapist or psychiatrist on a regular basis. As Dr. Bishop noted, Plaintiff's panic attacks happened "away from home," and were "triggered by small places like elevators or big crowds," not to mention, she was "afraid to leave home alone." [13-7 at 329]. Thus, her symptoms may have made her reluctant to seek treatment. Plaintiff may have been "avoiding … mental stressors that would exacerbate [her] symptoms," such as leaving her house unaccompanied, or taking public transportation. Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *8.

Plaintiff's symptoms, her self-medication and her financial problems, might have explained the lack her lack of mental health treatment. Indeed, when these factors are considered, her lack of treatment is consistent with Dr. Bishop's opinion that Plaintiff suffered from panic attacks and agoraphobia which interfered with her daily activities. It was the ALJ's responsibility to consider the foregoing evidence before relying on Plaintiff's noncompliance to discredit her testimony. *Id*. at *7. The ALJ's decision, however, appears to consider only one explanation – that her symptoms were less severe than she claimed. Neither the hearing transcript, nor the ALJ's decision, suggests that he considered other explanations.

The ALJ also discounted Dr. Bishop's opinion. To reiterate: "As noted, however, the claimant remained independent in her daily activities, and able to shop…" [13-2 at 66]. The ALJ may have been arguing that Dr. Bishop's report was inconsistent with Dr. Lazzara's, which is referenced earlier in his decision. However, Drs. Bishop and Lazzara gave very similar descriptions of Plaintiff's daily activities. Dr. Bishop wrote:

> The client has never driven and said her mother and grandmother also both have never driven. She is going through her house and cleaning it out to move; she has been there for 13 years. She does her own housework and laundry. Her friend will shop and cook. She does get food stamps. She may do dishes. She can pay bills if she has money. She can partially meet her basic needs.

15

[13-7 at 329]. Dr. Lazzara's wrote:

> She now lives with a friend as she lost her home due to foreclosure. She is able to do her activities of daily living. She does not drive. She now has been in the process of clearing all her stuff out of her house. She used to enjoy exercising. She is able to grocery shop and do household chores with her friend. She can sit and stand about a half hour. She does not know how much she can lift or how far she can walk.

[13-7 at 322]. Both doctors' notes show that Plaintiff did some household work, although they are unclear about what, exactly, she was able to do. Both descriptions reveal that she got help from her friend, particularly with grocery shopping.

If the ALJ meant, instead, that Dr. Bishop's conclusions were inconsistent with the daily activities Plaintiff reported to both doctors, he did not explain how. For example, Dr. Bishop noted that Plaintiff was "afraid to leave the house alone" and concluded that Plaintiff suffered from "agoraphobia." The descriptions above mostly confine Plaintiff's daily activities to her home. The one activity that involved leaving her home, shopping, she appears to have done either with her friend or not at all. If anything, Plaintiff's daily activities are consistent with Dr. Bishop's conclusions. The ALJ did not describe or allude to any other daily activities. Because the Court is unable to discern from the ALJ's opinion which of Plaintiff's activities undermined her credibility in the ALJ's eyes, this basis for the

adverse credibility finding lacks the specificity required by Social Security Ruling 96-7p.

Finally, Plaintiff maintains that the record does not support the ALJ's finding that "no longitudinal signs or symptoms of mental distress or dysfunction are documented in the record." [23 at 584]. While Plaintiff did not seek outpatient or inpatient psychological between 1999 and 2012, her examining physicians did record symptoms of her mental impairments. For example, on March 14, 2011, Dr. Demots wrote:

> MICHELLE POLHEMUS presents with complaints of sudden onset of anxiety, starting 2 weeks ago. (Husband left her no [money] or prospects and doubts the marriage can be put back tog[e]ther. Crying. Not sleeping but is in no [danger] or suicide). The patient confirms having difficulty concentrating, insomnia, irritability, nervousness, sweaty palms, sleep disruption, diaphoresis, gastrointestinal complaints, racing heart and tremors.

[13-7 at 356]. The ALJ acknowledges the March 2011 note, but seems to suggest that she was only anxious because her husband left her. [13-2 at 65]. This argument would make more sense if it were the only mention of anxiety in Plaintiff's records. It is not. Plaintiff saw a counselor for anxiety and depression once before, in 1999, following a fight with her supervisor. [13-7 at 314-18]. When Dr. Bishop examined Plaintiff, she observed signs of anxiety: "She had good reality contact with low self-esteem. She was pleasant although a little anxious. …

17

She was anxious when seen and had fair eye contact." [13-7 at 329]. The doctors at the University of Michigan also observed Plaintiff's anxious affect, and prescribed medication to treat her anxiety. *Infra* 12.

Furthermore, anxiety-disorders are often diagnosed by a person's history of reactions to his or her circumstances. Both State psychological consultants reviewed her records and diagnosed her with an anxiety-disorder. It is not clear then, what the ALJ meant by "no longitudinal signs or symptoms of mental distress or dysfunction are documented in the record." The ALJ has either ignored these signs, and thus misstated the record; *White,* 312 F. App'x at 788 ("Because the ALJ does not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence."); or dismissed these signs where medical professionals did not, thus substituting his own judgment for that of medical experts. *Simpson,* 344 F. App'x at 194.

For the foregoing reasons, the Court does not agree with the R&R [22] that substantial evidence supported the ALJ's reasons for discounting the State agency consultants' opinions. Instead, the Court finds that the ALJ's reliance on Plaintiff's lack of treatment to discount the opinions violated Social Security Ruling 96-7p. The ALJ also mischaracterizes and misstates the record in finding no longitudinal signs of mental impairment.

18

*b. Plaintiff's Second Objection*

Plaintiff objects to the Magistrate's conclusion that substantial evidence supports the ALJ's credibility determination. Plaintiff maintains that the ALJ's assessment is improper under SSR 96-7p, and that the ALJ's support for his determination mischaracterizes the record. Aside from Plaintiff's lack of mental health treatment, discussed above, the bases of the ALJ's credibility assessment, as summarized by the Magistrate, were Plaintiff's supposedly conflicting statements about why she quit work in 2009, why she does not drive, and what she was capable of doing on a daily basis, as well as a lack of objective support in the medical records for Plaintiff's subjective complaints. [22 at 575-76].

Social Security Ruling 96-7p requires an ALJ to provide an explanation of his credibility determinations "sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight the adjudicator gave to the [claimant's] statements and the reasons for that weight." *Id.* at *2. In the Sixth Circuit's words, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. In cases where subjective complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is

particularly important. *Id*. (citing *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)). Social Security Ruling 96-7p requires: "In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," the ALJ must consider factors, "in addition to the objective medical evidence when assessing the credibility of an individual's statements," including, "[t]he individual's daily activities."

Plaintiff claimed she quit work in 2009 because of pain in her hands and "sugar problems." [13-2 at 64]. The ALJ found that this claim was not supported by the medical records, which showed "no significant 'sugar problems' since the early 2000s," and no complaints about hand pain, "apart from some 'generalized wear and tear [from] working maintenance' until 2013." [13-2 at 64].The ALJ's reliance on the second point is unclear, because it seems consistent with Plaintiff's claim that she quit her maintenance job in 2009 because of hand-pain. Plaintiff also reported "sugar problems" to her doctor in April 2009, 2011 and 2013. [13-7 at 406; 359; 278]. The ALJ does say that the records show no *significant* problems, although he does not explain what this means. He mentions that Plaintiff's blood glucose measurements were normal in January 2012, but this was nearly three years after she had quit her job. [13-2 at 65]. As discussed earlier, findings of fact

that misstate the record are not supported by substantial evidence. *White,* 312 F. App'x at 788.

The ALJ has also argued that Plaintiff contradicted herself when she told a doctor, during an April 2012 Psychiatric/Psychological exam, that "[s]he stopped working in 2009 since she got married and moved." [13-2 at 64]. It should be noted that this may not be a fair basis for comparison, as this report focused primarily on Plaintiff's mental impairments. *See Keeton v. Comm'r of Soc. Sec.,* 583 F. App'x 515, 527 (6th Cir. 2014) (ALJ's determination was not supported by the record, in part because he failed to consider that medical examiner and psychological examiner reported different findings because they were concerned with different ailments.)

As discussed previously, the Plaintiff claimed that she does not drive due to her anxiety. The ALJ argued that she somehow contradicted herself when elsewhere she stated that she had never driven, and neither had her mother or grandmother. [13-2 at 64]. Defendant offers an explanation, stating that "the true reason she did not drive was that she never learned. … Despite Plaintiff's protest, the ALJ correctly found that she never drove, as opposed to having stopped driving at some point due to anxiety." [19 at 553-54]. This explanation does not make sense. Plaintiff claimed to have had problems with anxiety since she was 15 years

old. Since this was around the time she would have learned how to drive, the fact that she has never driven is consistent with her claim. Defendant does not help by misstating the Plaintiff's testimony, as Plaintiff never claimed that she "stopped driving at some point due to anxiety."

The ALJ notes that Plaintiff was able to clean out her house to move in 2012, which would undermine the claims she made during her hearing about her limitations. [13-2 at 64]. However, the medical records only vaguely mention that she was in the "process" of "clearing out her house." [13-7 at 323 & 329]. The records do not indicate what kind of physical activity this involved. Moreover, the ALJ downgraded the level of work Plaintiff was capable of performing from "medium" in 2012 to "light" at the time of the hearing, because she had subsequently been diagnosed with inflammatory arthritis and degenerative spinal changes. [13-2 at 67]. It is illogical for the ALJ to recognize further limitations on Plaintiff's abilities during one determination, but ignore them for the purposes of his credibility determination.

For the foregoing reasons, the Court does not agree with the R&R [22] that the ALJ's RFC credibility determinations were supported by substantial evidence. The ALJ did not clearly explain how Plaintiff's statements were inconsistent with the record, he otherwise misstated the record, and he did not properly consider the

factors listed in SSR 96-7p when assessing the credibility of Plaintiff's subjective complaints.

### c. *Plaintiff's Third Objection*

Plaintiff objects to the Magistrate's decision that substantial evidence supports the ALJ's RFC determination. Plaintiff contends that the ALJ failed to include limitations related [Plaintiff's] ankle pain, cervical pain, and anxiety. [23 at 586]. The Magistrate responded that the ALJ did not include limitations that he properly found not credible, and Plaintiff specifies no other limitations that warranted inclusion in her RFC. [22 at 577-78]

When crafting an RFC, an ALJ is only required to include those limitations he finds credible. See *Irvin v. Soc. Sec. Admin.*, 573 Fed. Appx. 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ found that Plaintiff could "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) …In addition, [Plaintiff] requires a 'sit/stand option', defined as the ability to occasionally alternate between sitting and standing positions while remaining on-task at least 90 percent of an ordinary workday, with usual and customary breaks." [13-2 at 63]. Based on this RFC, a vocational expert ("VE") determined that Plaintiff could adjust to work that existed in significant

numbers in the national economy [13-2 at 83-84], and the ALJ adopted this determination. [13-2 at 68]

At the hearing, in response to questions from Plaintiff's attorney, the VE testified that the work mentioned would require Plaintiff to be off-task for no more than ten percent of the work day, and would not allow more than one absence a month. [13-2 at 85-86]. Dr. Tareen had opined that Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was "moderately limited." The ALJ did not include this limitation in his RFC determination for reasons that are not supported by the record.

The VE also testified that if Plaintiff were limited to lifting five pounds, work only existed in significant numbers at the sedentary level. [13-2 at 86]. "Light" work requires the ability to lift and carry up to 20 pounds for 2 hours of an 8-hour workday, and to lift and carry up to 10 pounds for 6 hours of an 8-hour workday. Plaintiff testified that she did not lift more than 5 pounds on a daily basis, and doubted that she could frequently or occasionally lift more than that. Although the ALJ found this testimony not credible, the Court has already concluded that the ALJ did not properly evaluate her credibility.

## CONCLUSION

Plaintiff's Motion for Summary Judgment [17] asks the Court to reverse the ALJ's decision and award her benefits or, in the alternative, remand the case for further proceedings.  A district court may reverse a decision of the Commissioner of Social Security and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes [the claimant's] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

The Court finds that the credibility of Plaintiff's testimony concerning the severity and limiting effects of her symptoms is an essential factual issue in this case.  The ALJ failed to resolve the issue in a manner consistent with Social Security Agency regulations, as explained above.  The Court may not decide questions of credibility.  *Garner*, 745 F.2d at 387.  Remand, rather than a judicial award of benefits, is thus the appropriate remedy.  *See Faucher*, 17 F.3d at 174-76.

For the foregoing reasons, the Court declines to adopt the Report and Recommendation [23].  Therefore,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [17] is **GRANTED IN PART**.  **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [19] is **DENIED**.

25

**IT IS FURTHER ORDERED** that this case is **REMANDED** for a reassessment of the credibility of Plaintiff's testimony concerning the severity and limiting effects of her symptoms, employing the proper legal standards, and a new decision on her application consistent with the reassessment.

This case is **CLOSED**.

**SO ORDERED**.


<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow

Dated: March 14, 2016                Senior United States District Judge